GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
I agree with the Court that the grant of summary judgment with respect to the Schilfs’ desired warning that five suicides occurred during the Cymbalta clinical trials must be reversed because South Dakota likely would adopt the learned intermediary doctrine and the heeding presumption, see ante at 949, and because Lilly failed to rebut the heeding presumption. Although Dr. Briggs testified that he had reviewed the Cymbalta package insert, he did not recall that the insert cautioned that “completed suicide” was an observed adverse reaction to Cymbalta use. In fact, the Cymbalta package insert in use at the time Dr. Briggs prescribed Cymbalta for Peter disclosed a rate of completed suicide of between one-in-one-hundred and one-in-one-thousand trial participants. Because Dr. Briggs was unaware of this suicide rate and conceded that he would want to know about incidents of completed suicide when deciding whether to prescribe Cymbalta, I agree that the Schilfs raised a jury question as to whether the size, font, and location of the suicide rate disclosures in the package insert were adequate to warn Dr. Briggs of those risks.
I respectfully dissent, however, from the Court’s holding that the Schilfs’ “desired warnings” included a warning of “a causal role for Cymbalta in suicidality” separate from the actual warnings contained in the FDA’s October 2004 Public Health Advisory (“PHA”), see id., and that there are genuine issues of material fact as to whether Dr. Briggs knew about the risks disclosed in the PHA. Until this appeal, the Schilfs’ “desired warnings” were limited to (1) a disclosure of the five suicides that occurred during the Cymbalta clinical trials, and (2) the FDA’s recommended class-wide “black box” warning regarding the increased risk of pediatric suicide from all antidepressants, including Cymbalta, as detailed in the PHA. With regard to the second desired warning, the Schilfs relied on the PHA to establish that Lilly was aware of the increased risk of suicidality among pediatric antidepressant users, so the scope of their desired warning is limited to the warning conveyed by the PHA. See Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 854 (10th Cir.2003) (“In determining the adequacy of a warning, a court must also look to evidence concerning the manufacturer’s knowledge of the danger of the product.”). The Court correctly points out that “causality” was mentioned in the complaint and before the district court.[4] Ante at 949 n.l. However, on the few occasions where the Schilfs addressed causation in relation to the FDA studies, it was not to argue that Lilly should have given a separate warning that causality has been established, but rather to argue that the PHA and the studies underlying it would have conveyed such a warning specifically to Dr. Briggs. *953 Establishing that the content of the PHA included a disclosure of a causal link was relevant because it allowed the Schilfs to argue that Dr. Briggs was not familiar with the “full import” of the warning contained in the PHA, contradicting his claim that he had “seen and become aware” of the PHA.[5]
Even if there is a genuine controversy as to whether the FDA studies concluded that a causal connection exists between suicidality and pediatric antidepressant use, this issue is not material to this case, see Fed.R.Civ.P. 56(c), because the Schilfs’ desired warning from Lilly was not a causal warning in the abstract, but rather a replication of the specific warning contained in the PHA.[6] Thus, Lilly was entitled to summary judgment if Dr. Briggs already had “seen and become aware” of the “black box” warning in the PHA when he prescribed Cymbalta for Peter.
I agree with the district court that there is no genuine issue of fact as to whether Dr. Briggs was aware of the PHA and familiar with the warning disclosed therein. As a threshold matter, the Schilfs concede that Dr. Briggs was “aware of the recent FDA recommendation for a class wide suicide warning.” Dr. Briggs testified in his deposition that he became aware of that recommendation shortly after the FDA issued the PHA on October 15, 2004. Furthermore, he testified that, before he prescribed Cymbalta for Peter, he had “seen and become aware of the [PHA] regarding antidepressants in pediatric populations and the issue of suicidality.” When asked whether he told Cynthia Schilf that the FDA had recommended a “black box” warning for antidepressants, including Cymbalta, Dr. Briggs answered, “I can’t recall using those terms ... [b]ut I know we breached that subject specifically.” Dr. Briggs explained, “I told her about the FDA studies that were done.... I told her exactly what those studies were indicating.” When asked whether he told Peter and Cynthia “how much the increased risk was [in the PHA] with respect to antidepressants and suicide,” Dr. Briggs responded that the PHA relied on several studies but that the “average is 2 percent to 4 percent.” When asked whether he had understood “what the FDA had indicated, that [the risk] had gone from 2 percent to 4 percent, back in October 2004,” Dr. Briggs confirmed that he had, “[i]n the context of how the studies were interpreted.” Furthermore, Dr. Briggs testified that he warned Peter and Cynthia about the risk of pediatric suicide, repeatedly asked Peter whether he was having suicidal thoughts, and asked Cynthia to watch for suicidal tendencies. He testified, “We specifically discussed that issue, though, the FDA and their recommendations or warnings.” Dr. Briggs’s undisput *954 ed testimony establishes that he was familiar with the PHA warning of an increased risk of suicidality in pediatric users of antidepressants and the need to warn pediatric Cymbalta users and their families to watch for signs of suicidal tendencies. Thus, there is no genuine issue of material fact as to whether Dr. Briggs was familiar with the PHA and the risks disclosed therein, including its recommended “black box” warning of the increased risk of suicidality, regardless of Lilly’s failure to include it in the packaging for Cymbalta.
The Court’s finding of some ambiguity as to whether Dr. Briggs understood the warning in the PHA is based on a misinterpretation of Dr. Briggs’s testimony. While the Schilfs seek to interpret the studies underlying the PHA as sufficient to establish a causal role for antidepressant use in suicidality, Dr. Briggs testified that, at the time he prescribed Cymbalta to Peter Schilf, he interpreted the studies as merely supporting the existence of a correlation between the two. Thus, Dr. Briggs’s assertion during his deposition that neither the FDA studies underlying the PHA nor subsequent studies established that antidepressant use causes pediatric suicidality evidences a nuanced understanding of the FDA studies, not a lack of familiarity. Most importantly, there is no evidence that Dr. Briggs’s interpretation of the studies would have been different if Lilly had directly provided the “black box” warning to him.[7] Dr. Briggs’s interpretation of the PHA is supported by the fact that, although the FDA initially sent Lilly and other antidepressant manufacturers a letter suggesting that they amend their package inserts to state that “[a] causal role for antidepressants in inducing suicidality has been established in pediatric patients,” the FDA subsequently required Lilly to “excise” the causation language and replace it with an “increased risk” warning to better reflect the information contained in the “black box” warning originally published in the PHA. The revised FDA-approved Cymbalta package insert states that “[patients with major depressive disorder ... may experience worsening of their depression and/or emergence of suicidal ideation and behavior (suicidality) or unusual changes in behavior, whether or not they are taking antidepressant medications” (emphasis added). This statement is consistent with the current FDA-approved “black box” warning for Cymbalta, which discloses that antidepressants “increased the risk compared to placebo of suicidal thinking and behavior (suicidality) in children,” but also notes that “depression and certain other psychiatric disorders are themselves associated with increases in the risk of suicide.”[8] In summary, Dr. *955 Briggs’s denial that a causal role for pediatric antidepressant use in suicidality had been established in 2004 does not create a genuine issue of fact as to whether he was familiar with the PHA and the suicidality warning it contained.
Because the Schilfs relied on the PHA to establish what information regarding suicidality Lilly should have provided to Dr. Briggs, see Thom, 353 F.3d at 854, Dr. Briggs’s familiarity with the relevant information in the PHA at the time he prescribed Cymbalta to Peter rebuts the heeding presumption and breaks the chain of causation between Lilly’s failure to warn the Schilfs about the suicide risk disclosed in the PHA and Peter’s tragic death. See Ehlis v. Shire Richwood, Inc., 367 F.3d 1013, 1016 (8th Cir.2004) (“[T]he causal link between a patient’s injury and the alleged failure to warn is broken when the prescribing physician had ‘substantially the same’ knowledge as an adequate warning from the manufacturer should have communicated to him.” (quoting Christopher v. Cutter Labs., 53 F.3d 1184, 1192 (11th Cir.1995))).
For the foregoing reasons, the grant of summary judgment should be affirmed as to the Schilfs’ failure-to-warn claim based on Lilly’s failure to inform Dr. Briggs of the FDA’s proposed “black box” warning as detailed in the PHA.

. In collecting examples of how "causality” was at issue before the district court, the Court confuses the "causation” element of the Schilfs’ tort claims (i.e., whether the alleged failure to warn proximately caused the harm to Peter Schilf) with the completely separate issue of whether Lilly should have known that a causation warning was necessary based on the FDA studies underlying the PHA. Contrary to the Court's conflation of these issues, only the latter type of "causality” is at issue in this appeal.

. The Schilfs also argued before the district court that Dr. Briggs’s testimony was not credible because he provided no contemporaneous proof of his familiarity with the PHA at the time he prescribed Cymbalta to Peter and because his description of the warnings he gave to the Schilfs differed from how Cynthia Schilf described the warnings related to them by Dr. Briggs. These arguments before the district court confirm that the Schilfs were contending not that Lilly should have given a warning of a causal link, but rather that Lilly should have given the specific warning contained in the PHA.

. The district court's assumption, for purposes of its decision, that Lilly’s package insert was inadequate because it did not "convey a causal connection between taking Cymbalta and suicidality” merely reflects its understanding that the Schilfs interpreted the PHA, the warning they desired, as conveying such a causal connection. This interpretation is evidenced by the district court’s conclusion that “Dr. Briggs was aware of the same warnings that [the Schilfs] now say [Lilly] should have given to prescribing physicians such as Dr. Briggs.” Ante at 949.

. Contrary to the Court’s statement, ante at 950 n.2, Dr. Briggs’s familiarity with the PHA is the dispositive issue, not whether he believed the information it contained or interpreted it in the same way the Schilfs currently do. Dr. Briggs offered uncontradicted testimony that he understood in 2004 that the FDA had determined “that there was an association between antidepressants and suicide.” Id. at 950. Even if the Court is correct that Dr. Briggs did not believe that the FDA study "represented the risks of ... Cymbalta,” id. at 950 n.2, this merely demonstrates that Lilly has rebutted the heeding presumption in this case because Dr. Briggs was familiar with the warning in the PHA, exactly what the Schilfs desired that Lilly should have provided to him, and chose to disregard it. See In re Prempro Prods. Liah. Litig., 586 F.3d 547, 569 (8th Cir.2009).

. Contrary to the Court’s suggestion, ante at 950-51 n. 3, I do not rely on the FDA’s clarification that the PHA warning is one of association and not one of causation to show that the Schilfs’ state-law claims are preempted by the FDA’s decision. Rather, I rely on this information merely to show that Dr. Briggs’s interpretation of the PHA and the underlying FDA studies is not unreasonable. *955 Having established that Dr. Briggs's interpretive disagreement with the Schilfs does not contradict his testimony that he was familiar with the risks disclosed in the PHA, this disagreement becomes immaterial to the resolution of this appeal because Dr. Briggs was familiar with the Schilfs’ desired warning, as set forth in the PHA, and disagreed with the Schilfs’ interpretation of it.